IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 13-cv-02174-MSK

ROBERT H. DIXON,

     Applicant,

v.

STEVE HARTLEY,
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

ORDER TO DISMISS IN PART AND FOR ANSWER

---

Applicant, Robert H. Dixon, is in the custody of the Colorado Department of Corrections

(CDOC). He is incarcerated currently at the Arkansas Valley Correctional Facility in Ordway,

Colorado. Mr. Dixon has filed an Amended Application for a Writ of Habeas Corpus Pursuant

to 28 U.S.C. § 2254 (ECF No. 21) challenging the validity of his criminal conviction in the

District Court of Denver County, Colorado. He has paid the $5.00 filing fee.

In a September 23, 2013 Order, Magistrate Judge Boyd N. Boland directed Respondents

to file a pre-answer response addressing the affirmative defenses of timeliness under 28 U.S.C.

§ 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A). Respondents

submitted a pre-answer response on November 4, 2013. In the Pre-Answer response,

Respondents argued that the claims in the original Application were not adequately pleaded.

The Court agreed and in a December 4, 2013 order, directed Mr. Dixon to file an Amended

Application within thirty days. Applicant filed the Amended Application on January 21, 2014.

(ECF No. 21). Thereafter, Magistrate Judge Boland ordered Respondents to file an Amended

Pre-Answer Response.  The Amended Pre-Answer Response was filed on January 30, 2014.

(ECF No. 25).  Mr. Dixon was afforded an opportunity to file a Reply.

The Court must construe liberally the Amended Application filed by Mr. Dixon  because

he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v.

Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not act as an

advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  For the reasons stated below, the

Court will dismiss the Amended Application, in part.

## I. Background and State Court Proceedings

Mr. Dixon's first trial ended in a hung jury and mistrial.  (ECF Nos. 15-1, at 6; 15-12, at

14).  Following a second trial, Mr. Dixon was convicted by a jury of first degree sexual assault in

Denver County District Court Case No. 06CR3022.  (ECF No. 15-1, at 9).  He was also

adjudicated a habitual offender and sentenced to a 48-year prison term in the CDOC.  (*Id.*).

The Colorado Court of Appeals affirmed Mr. Dixon's convictions and sentence on direct

appeal in *People v. Dixon* (*Dixon I*)*,* No. 07CA1158 (Colo. App. Sept. 10, 2009) (unpublished

decision).  (Doc. No. 15-11).  The Colorado Supreme Court denied Applicant's request for

certiorari review on December 21, 2009.  (ECF No. 15-9).

On April 12, 2010, Mr. Dixon filed a motion for sentence reconsideration pursuant to

Colo. R. Crim. P. 35(b), which was denied by the state district court on July 7, 2010.  (ECF No.

15-1, at 3).  Applicant did not appeal that order.

On December 30, 2010, Mr. Dixon filed a motion for post-conviction relief pursuant to

Colo. R. Civ. P. 35(c), which the state district court denied summarily on April 1, 2011.  (*Id.* at

2; ECF No. 15-8).  The Colorado Court of Appeals affirmed the district court's order in *People*

2

*v. Dixon* (*Dixon II*), 11CA0942 (Colo. App. Oct. 18, 2012)  (unpublished).  (ECF No. 15-6).

The Colorado Supreme Court denied certiorari review on June 24, 2013.  (ECF No. 15-4).

Mr. Triggs initiated this action on August 14, 2013.  The Court discerns the following claims from the Amended Application:

1) Prosecutorial misconduct, in violation of Applicant's due process rights, as evidenced by: (a) the prosecution's strikes of "all African-Americans and women gender" from the panel, leaving an "all white jury with only one women [sic]" (ECF No. 21, at 7); (b) changes during the second trial, in the testimony of the Sexual Assault Nurse Examiner (SANE) who examined the victim; at the second trial, the SANE (i) "exaggerat[ed] the severity of [her] evidentiary medical findings" (*id.* at 5); and, (ii) "alter[ed] a diagram she had prepared and used in the first trial," to show "more cuts and injury's [sic] to the victim's labia (*id.*); (c) the prosecution's introduction of "false evidence" namely, crime scene photos alleged to have been, but actually were not, taken by the original detective (*id.* at 6); (d) the prosecution's handling of other act evidence – namely, (i) mentioning, during opening statement, that Applicant had sexually assaulted two other victims (without the benefit of an immediate curative instruction) (*id.* at 7); (ii) asserting that the other sexual assaults happened in the same way as the charged crime (*id.*); and, (iii) suggesting, during cross-examination of Applicant, that he had sexually assaulted two other victims (*id.* at 6); (e) the prosecution's closing argument, which: (i) falsely exaggerated the SANE's findings (*id.* at 6) (e.g., arguing that the victim's vagina was "shredded" and "torn open from top to bottom"); (ii) improperly stated that the jurors would have felt "cheated" if the prosecution had not introduced evidence of applicant's prior sexual assaults, as it had discussed in opening statements (*id.* at 8); and, (iii) "[w]hat you have heard from SM confirmation by nurse Marquez tells you this was not consensual intercourse" (*id.*); and, (f) cumulative error (*id.*).

2) The trial court violated Applicant's due process rights when: (a) an expert prosecution witness who did not testify at the first trial testified at the second, even though the expert was not endorsed properly and the defense was unprepared for his testimony (ECF No. 21, at 8); (b) the SANE testified "as an expert on physical trauma without having any expertise in [the] field" (*id.* at 9); (c) the trial court excluded evidence that: (i) a witness, Ms. E, who testified at the first trial that the victim's car was stolen, had since admitted that the victim gave Ms. E permission to use the car (*id.* at 9), and, (ii) the victim's vaginal injury could have been caused by a sexual encounter she had with another person "within hours" of having sex with Applicant (*id.*); (d) the trial court erroneously admitted another sexual assault (i) in the absence of proof that Applicant actually committed that assault (*id.* at 9-10); and, (ii) that, being nearly 20 years old, was too remote in time and unduly prejudicial (*id.* at 10); (e) the trial court ruled that

counsel appointed to investigate the validity of Applicant's prior convictions, alleged as habitual criminal counts, could not represent Applicant in the habitual criminal adjudication (*id.* at 10); (f) the trial court refused to appoint new counsel after applicant complained "numerous times that his counsel would not listen to him and refused to let him participate in any way in his own defense" (*id.*); (g) the trial court refused to conduct a proportionality review (*id.* at 11); and, (h) cumulative error (*id.*).

3). Trial counsel was ineffective in failing to: (a) introduce and use evidence of the alleged victim's clothing to prove that the victim was not dragged 10 feet through dirt and grass, held down, and assaulted; (b) introduce the victim's videotaped statement to the police in which she admitted to having consented to having sex with the Applicant; (c) investigate and use telephone records to show that the victim and her friend were in contact with the Applicant the day of the assault, and afterward; (d) introduce preliminary hearing transcripts to impeach the victim's testimony; and, (e) introduce Nurse Marquez's prior statements into evidence that she did not know how the victim's injury occurred. (ECF No. 21, at 11-13).

4). Trial counsel was ineffective in failing to: (a) interview or subpoena Detective Castro to testify at trial that he did not believe that a crime had been committed; (b) investigate and call the victim's friend, a known prostitute, as a witness to testify that on the night of the assault she and the victim had been drinking and smoking crack cocaine, and that the victim had engaged in prostitution; (c) investigate witnesses John L. and Suzanne S. "on behalf of the petitioner['s] defense and credibility"; (d) endorse and use a criminal investigator; and, (e) endorse a physical trauma expert to evaluate and testify about the physical evidence. (*Id.* at 13-14).

5). Trial counsel was ineffective in: (a) suggesting that Applicant was guilty of the sexual assault; (b) communicating privately with a juror; (c) failing to impeach the victim after she committed perjury; (d) failing to impeach witness Detective Colaizzi after he lied about not having video evidence that would have exonerated Applicant; (e) failing to adequately cross-examine Officer Ortega about the victim's statements to him; (f) bringing up "the pet criminal past" to the jury; (g) failing to make objections to certain evidence and to prosecutorial arguments; (h) refusing Applicant access to discovery; (i) failing to advise Applicant whether to testify on his own behalf at trial and in the habitual criminal trial; (j) in continuing to represent Applicant even though there was a conflict-of-interest and in failing to advise the court that a different attorney was representing Applicant in the habitual criminal proceeding; and, (k) failing to conduct an investigation and present mitigating evidence. (*Id.* at 15-17). Direct appeal counsel was constitutionally ineffective in failing to present on appeal numerous constitutional errors that occurred at Applicant's trial. (*Id.* at 18). The evidence to support his sexual assault conviction was insufficient because the prosecution

relied on inadmissible other acts evidence and prejudicial arguments to convict him. (*Id.*).   Applicant's habitual criminal convictions were unconstitutionally obtained. (*Id.*).

## II.  Timeliness of Application

Respondents do not challenge the timeliness of the Application under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1). (*See* ECF No. 25, at 5-6).

## III.  Exhaustion of State Remedies and Procedural Default

Respondents concede that Mr. Dixon exhausted state remedies for claims 1(b)(i), 1(b)(ii), 1(e)(i), and 2(c)(ii).  (ECF No. 25, at 21).  Respondents contend, however, that the remainder of Applicant's claims are barred from federal habeas review based on the doctrines of procedural default and anticipatory procedural default.  (*Id.* at 19-36).

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 843 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement.  *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989). Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not

5

enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).  A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

If a habeas petitioner "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default. . . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Anderson v. Sirmons*, 476 F.3d 1131, 1139-40 n.7 (10th Cir. 2007) (applying anticipatory procedural bar).  A claim that has been procedurally defaulted in the state courts on an independent and adequate state procedural ground is precluded from federal habeas review, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the federal violation, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750; *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007).

A petitioner's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice.  *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

## IV. Analysis

### A.   Claim 1

Mr. Dixon first asserts a claim of prosecutorial misconduct, in violation of his due process rights, as evidenced by the following:  (a) the prosecution's strikes of "all African-Americans and women gender" from the panel, leaving an "all white jury with only one women [sic]" (ECF No. 21, at 7); (b) changes during the second trial, in the testimony of the Sexual

Assault Nurse Examiner (SANE) who examined the victim; at the second trial, the SANE (i) "exaggerat[ed] the severity of [her] evidentiary medical findings" (*id.* at 5); and, (ii) "alter[ed] a diagram she had prepared and used in the first trial," to show "more cuts and injury's [sic] to the victim's labia (*id.*); (c) the prosecution's introduction of "false evidence" namely, crime scene photos alleged to have been, but actually were not, taken by the original detective (*id.* at 6); (d) the prosecution's handling of other act evidence – namely, (i) mentioning, during opening statement, that Applicant had sexually assaulted two other victims (without the benefit of an immediate curative instruction) (*id.* at 7); (ii) asserting that the other sexual assaults happened in the same way as the charged crime (*id.*); and, (iii) suggesting, during cross-examination of Applicant, that he had sexually assaulted two other victims (*id.* at 6); (e) the prosecution's closing argument, which: (i) falsely exaggerated the SANE's findings (*id.* at 6) (e.g., arguing that the victim's vagina was "shredded" and "torn open from top to bottom"); (ii) improperly stated that the jurors would have felt "cheated" if the prosecution had not introduced evidence of applicant's prior sexual assaults, as it had discussed in opening statements (*id.* at 8); and, (iii) "[w]hat you have heard from SM confirmation by nurse Marquez tells you this was not consensual intercourse" (*id.*); and, (f) cumulative error (*id.*).

### 1. Sub-claims 1(b)(i), 1(b)(ii), 1(e)(i)

Respondents concede that Mr. Dixon exhausted state remedies for claims 1(b)(i), 1(b)(ii), 1(e)(i).  (ECF No. 25, at 14).

### 2. Sub-claims 1(a), 1(c), 1(d)(i), 1(d)(ii), 1(e)(ii) and 1(e)(iii)

Respondents argue, and the Court so finds, that Mr. Dixon failed to exhaust state remedies for sub-claims 1(a), 1(c), 1(d)(i), 1(d)(ii), 1(e)(ii) and 1(e)(iii) because he did not

present those claims to the Colorado Court of Appeals on direct appeal or in his state post-conviction proceeding.  (*See* ECF Nos. 15-12; 15-7).  The Court further agrees with Respondents' contention that Applicant has committed an anticipatory procedural default of sub-claims 1(a), 1(c), 1(d)(i), 1(d)(ii), 1(e)(ii) and 1(e)(iii) because if he attempted to raise the claims in a new state post-conviction proceeding, the motion would be dismissed on procedural grounds.

The Colorado Rules of Criminal Procedure provide that in deciding a motion for postconviction relief, "[t]he court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought." *See* Colo. R. Crim. P. 35(c)(3)(VII) (stating that the court shall deny any claim that could have been raised in a prior appeal or post-conviction proceeding); *see also People v. Valdez*, 178 P.3d 1269, 1275 (Colo. App. 2007); *People v. Vondra*, 240 P.3d 493, 494-95 (Colo. App. 2010); *accord Turman v. Buckallew*, 784 P.2d 774, 780 (Colo. 1989) ("We have emphasized that where a post-conviction application is filed, it should contain all factual and legal contentions of which the applicant knew at the time of filing, and failure to do so will, unless special circumstances exist, ordinarily result in a second application containing such grounds being summarily denied.") (internal quotation marks omitted).  Colo. R. Crim. P. 35(c)(3)(VII) is an adequate state procedural ground for rejecting a claim.  *See Burton v. Zavaras*, No. 09-1094, 340 F. App'x 454-55 (10th Cir. Aug. 4, 2009) (unpublished) (applying Colorado's bar against successive claims); *Williams v. Broaddus*, No. 08-1254, 331 F. App'x 560, 563 (10th Cir. May 20, 2009) (unpublished).

Mr. Dixon is not entitled to have this Court review the merits of his defaulted claims unless he meets the cause and prejudice standard or demonstrates that he is actually innocent of the crime.  *See Coleman*, 501 U.S. at 750; *Cummings*, 506 F.3d at 1224.  Mr. Dixon asserts, as

cause for his procedural default, that appellate counsel was ineffective in failing to raise meritorious issues on direct appeal.  (*See* ECF No. 21, at 6-18).

Appellate counsel's failure to raise a meritorious issue on direct appeal may constitute cause to excuse a procedural default.  *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Hammon v. Ward*, 466 F.3d 919, 925 (10th Cir. 2006).  However, the claim that appellate counsel was constitutionally ineffective must itself be exhausted in the state courts.  *Edwards*, 529 U.S. at 453.  Mr. Dixon did not exhaust a claim of ineffective assistance of appellate counsel in the state courts and therefore has procedurally defaulted that claim.  *See discussion* Section IV.C.1, *infra*.  Accordingly, the Court finds that Applicant has failed to demonstrate cause for his procedural default.  He does not assert any other grounds to excuse his procedural default in the Amended Application and did not file a reply to the Respondents' Amended Answer.  Sub-claims 1(a), 1(c), 1(d)(i), 1(d)(ii), 1(e)(ii) and 1(e)(iii) therefore will be dismissed.

### 3.  Sub-claim 1(d)(iii)

In claim 1(d)(iii), Applicant asserts that the prosecutor engaged in misconduct by suggesting, during cross-examination of Applicant, that he had sexually assaulted two other victims.  Respondents argue that Mr. Dixon procedurally defaulted sub-claim 1(d)(iii) in his direct appeal proceeding.  (ECF No. 25, at 15).

In *Dixon I*, Applicant asserted, in conjunction with a claim of cumulative error, that the admission of evidence concerning his "nearly 20-year-old crimes" unduly prejudiced him at trial. (ECF No. 15-12, at 26).  The Colorado Court of Appeals declined to consider this claim because Applicant "provide[d] no legal authority or analysis, citations to the record where the error occurred, or argument as to the alleged errors in the trial proceedings."  (*Dixon I*, ECF No. 15-11, at 11).

The state appellate court's decision was based on an adequate state procedural rule.  *See People v. Rodriguez*, 914 P.2d 230, 255 n. 24 (Colo. 1996) (declining to review an appellate argument that was "unsupported with facts, record cites, or case law," citing *People v. Diefenderfer*, 784 P.2d 741, 752 (Colo. 1989) (recognizing the duty of an appealing party to inform reviewing court as to specific error relied on and the grounds, supporting facts, and authorities therefor)); *People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) ("We decline to consider a bald legal proposition presented without argument or development. . . ."); *People v. Parrish*, 879 P.2d 453, 457-58 (Colo. App. 1994) (claims not raised with specificity will not be considered on appeal).

Accordingly, sub-claim 1(d)(iii) is procedurally barred.  The Court further finds that Mr. Dixon has failed to meet the cause and prejudice standard or the fundamental miscarriage of justice exception, for the reasons discussed in Section IV.A.2, *supra.*  Sub-claim 1(d)(iii) therefore will be dismissed.

### 4. Sub-claim 1(f)

Mr. Dixon asserts cumulative error in sub-claim 1(f).  (ECF No. 21, at 8).  The claims are based on alleged errors raised by Applicant in his direct appeal proceeding.  Mr. Dixon argued on direct appeal that if the issues raised in exhausted sub-claims 1(b)(i), 1(b)(ii), 1(d)(iii),  and 1(e)(i) did not individually require reversal, they accumulated to require reversal.  (ECF No. 15-12, at 25-30).

Respondents contend that Mr. Dixon did not exhaust his cumulative error claim as a federal constitutional issue in his direct appeal proceeding and has thus committed an anticipatory procedural default of sub-claim 1(f).  (ECF No. 21, at 24).

"In the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Alverson v. Workman*, 595 F.3d 1142. 1162 (10th Cir. 2010).

The Court finds that Mr. Dixon properly exhausted a federal claim of cumulative error with regard to sub-claims 1(b)(i), 1(b)(ii), and 1(e)(i), each of which fairly presented a constitutional claim to the Colorado Court of Appeals in Applicant's direct appeal proceeding. Because the allegations in sub-claim 1(d)(iii) were procedurally defaulted in the state courts, sub-claim 1(d)(iii) will not be considered as a basis for cumulative error.

Respondents contend, in the alternative, that even if Mr. Dixon properly raised a federal cumulative error claim in the Colorado Court of Appeals, he failed to present the issue in his petition for certiorari review in the Colorado Supreme Court (ECF No. 15-10), and, therefore, failed to exhaust available state court remedies for the claim.

Although a claim must be presented to the state's highest court if review in that court is available, *see O'Sullivan*, 526 U.S. at 845, "there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available," *id*. at 847-48. Therefore, if a state articulates that a certain avenue for relief is not part of its standard appellate review process, it is not necessary for a defendant to pursue that avenue in order to exhaust state remedies. *See id.*

The State of Colorado has articulated that review in the Colorado Supreme Court is not part of the standard state appellate review process. More specifically, the Colorado Appellate Rules provide that:

11

> In all appeals from criminal convictions or postconviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.  Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

Colo. App. R. 51.1.

Pursuant to Colo. App. R. 51.1, review in the Colorado Supreme Court is not required to exhaust state remedies if the claim in question was presented fairly to, and relief was denied by, the Colorado Court of Appeals.  *See, e.g., Valenzuela v. Medina*, No. 10-cv-02681-BNB, 2011 WL 805787 (D. Colo. Feb. 28, 2011).  The Court's conclusion is supported by the fact that four circuit courts have determined that state rules similar to Colo. App. R. 51.1 eliminate the need to seek review in the state's highest court in order to satisfy the exhaustion requirement.  *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004); *Adams v. Holland*, 330 F.3d 398, 401-03 (6th Cir. 2003); *Randolph v. Kemna*, 276 F.3d 401, 404-05 (8th Cir. 2002); *Swoopes v. Sublett*, 196 F.3d 1008, 1009-10 (9th Cir. 1999).

The Court finds that sub-claim 1(f) (cumulative error) is exhausted because Applicant presented the claim to the Colorado Court of Appeals and was denied relief.  (ECF No. 15-11, at 10).  The Court rejects Respondents' failure to exhaust defense with respect to sub-claim 1(f), insofar as Applicant asserts a federal claim of cumulative error based on the issues raised in sub-claims 1(b)(i), 1(b)(ii) and 1(e)(i).

**B.  Claim Two**

In claim two, Mr. Dixon contends that the trial court violated his due process rights when: (a) an expert prosecution witness who did not testify at the first trial testified at the

second, even though the expert was not endorsed properly and the defense was unprepared for

his testimony (ECF No. 21, at 8); (b) the SANE testified "as an expert on physical trauma

without having any expertise in [the] field" (*id.* at 9); (c) the trial court excluded evidence that:

(i) a witness, Ms. E, who testified at the first trial that the victim's car was stolen, had since

admitted that the victim gave Ms. E permission to use the car (*id.* at 9); and, (ii) the victim's

vaginal injury could have been caused by a sexual encounter she had with another person

"within hours" of having sex with Applicant (*id.*); (d) the trial court erroneously admitted

another sexual assault (i) in the absence of proof that Applicant actually committed that assault

(*id.* at 9-10); and, (ii) that, being nearly 20 years old, was too remote in time and unduly

prejudicial (*id.* at 10); (e) the trial court ruled that counsel appointed to investigate the validity of

Applicant's prior convictions, alleged as habitual criminal counts, could not represent Applicant

in the habitual criminal adjudication (*id.* at 10); (f) the trial court refused to appoint new counsel

after applicant complained "numerous times that his counsel would not listen to him and refused

to let him participate in any way in his own defense" (*id.*); (g) the trial court refused to conduct a

proportionality review (*id.* at 11); and (h) cumulative error (*id.*). (ECF No. 21, at    ).


### 1. Sub-claim 2(c)(ii)

Respondents concede that Mr. Dixon exhausted state court remedies for sub-claim

2(c)(ii) to the extent he asserts a violation of his constitutional right to present a defense.  (ECF

No. 25, at 21-22).

However, Respondents note that Applicant also raised a claim in the state appellate court

that his Sixth Amendment confrontation rights were violated when the trial court excluded

evidence that the victim had sex with her boyfriend 24-36 hours before the charged sexual

assault.  (ECF No. 15-12, at 20-23).  The Colorado Court of Appeals declined to address the

confrontation argument because Mr. Dixon failed to raise it before the trial court.  (ECF No. 15-

11, at 7, 10).  The state appellate court's procedural ruling is based on well-established state law.

*See e.g. Cagle v. People,* 751 P.2d 614, 619 (Colo. 1988) ("It is axiomatic" that appellate courts

will not address claims presented for the first time in an appeal); *see also People v. Brown,* 250

P.3d 718, 721-22 (Colo. App. 2010) (declining to consider postconviction claims not raised in

postconviction court) (citing, *e.g. People v. Allen,* 199 P.3d 33, 35 (Colo. App. 2007)); *People v.*

*Salyer,* 80 P.3d 831, 835 (Colo. App. 2003).  Accordingly, to the extent Mr. Dixon asserts a

confrontation claim in his Amended § 2254 Application, the claim is procedurally defaulted.  For

the reasons discussed in Section IV.A.2, *supra,* Applicant has not met the cause and prejudice

standard or the fundamental miscarriage of justice exception to excuse his procedural default.

## 2.  Sub-claims 2(b), 2(d)(i), 2(e) and 2(g)

Respondents argue, and the Court so finds, that Mr. Dixon failed to exhaust state

remedies for sub-claims 2(b), 2(d)(i), 2(e) and 2(g) because he did not present those claims to the

Colorado Court of Appeals on direct appeal or in his state post-conviction proceeding.  (*See* ECF

Nos. 15-12; 15-7).  The Court further agrees with Respondents' contention that Applicant has

committed an anticipatory procedural default of sub-claims 2(b), 2(d)(i), 2(e) and 2(g) because if

he attempted to raise the claims in a new state post-conviction proceeding, the motion would be

dismissed on procedural grounds.  *See* Colo. R. Crim. P. 35(c)(3)(VII); *Valdez,* 178 P.3d at 1275;

*Vondra,* 240 P.3d at 494-95.   The Court also finds that Mr. Dixon has failed to meet the cause

and prejudice standard or the fundamental miscarriage of justice exception, for the reasons

discussed in Section IV.A.2, *supra.*  Accordingly, sub-claims 2(b), 2(d)(i), 2(e) and 2(g) will be

dismissed.

### 3.  Sub-claims 2(a), 2(c)(i), and 2(d)(ii)

Respondents maintain that sub-claims 2(a), 2(c)(i), and 2(d)(ii) were defaulted in Mr. Dixon's direct appeal proceeding pursuant to a state procedural rule.  (ECF No. 25, at 20).

In *Dixon I*, Applicant asserted, in conjunction with a claim of cumulative error, that the trial court violated his due process rights when the court: allowed improper testimony from the People's rape psychologist; excluded evidence that a witness, Ms. E, who testified at the first trial that the victim's car was stolen, had since admitted that the victim gave Ms. E permission to use the car; and, admitted evidence of "Dixon's nearly 20-year-old crimes, which was unduly prejudicial.  (ECF No. 15-12, at 26-27).  The Colorado Court of Appeals declined to consider the claims because Applicant "provide[d] no legal authority or analysis, citations to the record where the error occurred, or argument as to the alleged errors in the trial proceedings."  (*Dixon I*, ECF No. 15-11, at 11).

The Court finds that Applicant defaulted sub-claims 2(a), 2(c)(i), and 2(d)(ii) in the state appellate court pursuant to an adequate procedural rule. *See Rodriguez*, 914 P.2d at 255 n. 24; *Diefenderfer*, 784 P.2d at 752.  Further, Mr. Dixon has failed to meet the cause and prejudice standard or the fundamental miscarriage of justice exception, for the reasons discussed in Section IV.A.2, *supra.*  Accordingly, sub-claims 2(a), 2(c)(i), and 2(d)(ii) will be dismissed.

### 4.  Sub-claim 2(h)

Mr. Dixon asserts cumulative error in sub-claim 2(h).  (ECF No. 21, at 11).

As discussed in Section IV.A.4, *supra*, Applicant argued in *Dixon I* that if none of his individual claims of error warranted reversal, then they accumulated to require reversal.

The Court has concluded that Applicant can proceed with a claim of cumulative error (sub-claim 1(f)) based on sub-claims 1(b)(i), 1(b)(ii) and 1(e)(i) because those claims were exhausted in the state courts, as was his claim of cumulative error.

The Court further finds that Mr. Dixon may pursue the allegations raised in exhausted sub-claim 2(c)(ii) as part of his cumulative error claim raised in claim 1(f).  However, the other errors alleged by Mr. Dixon as part of sub-claim 2(h)  were procedurally defaulted in the state courts and, therefore, Applicant cannot pursue those allegations as a basis of his federal cumulative error claim.

## C.  Claims Three, Four and Five

For his third claim, Mr. Dixon asserts that his trial counsel was ineffective in failing to: (a) introduce and use evidence of the alleged victim's clothing to prove that the victim was not dragged 10 feet through dirt and grass, held down and assaulted; (b) introduce the victim's videotaped statement to the police in which she admitted to having consented to having sex with the Applicant; (c) investigate and use telephone records to show that the victim and her friend were in contact with the Applicant the day of the assault, and afterward; (d) introduce preliminary hearing transcripts to impeach the victim's testimony; and, (e) introduce Nurse Marquez's prior statements into evidence that she did not know how the victim's injury occurred.  (ECF No. 21, at 11-13).

In claim four, Applicant asserts that trial counsel was ineffective in failing to: (a) interview or subpoena Detective Castro to testify at trial that he did not believe that a crime had been committed; (b) investigate and call the victim's friend, a known prosecute, as a witness to testify that on the night of the assault she and the victim had been drinking and smoking crack cocaine, and that the victim had engaged in prostitution; (c) investigate witnesses John L. and

Suzanne S. "on behalf of the petitioner['s] defense and credibility"; (d) endorse and use a criminal investigator; and, (e) endorse a physical trauma expert to evaluate and testify about the physical evidence.  (*Id.* at 13-14).

For his fifth claim, Applicant maintains that trial counsel was ineffective in: (a) suggesting that Applicant was guilty of the sexual assault; (b) communicating privately with a juror; (c) failing to impeach the victim after she committed perjury; (d) failing to impeach witness Detective Colaizzi after he lied about not having video evidence that would have exonerated Applicant; (e) failing to adequately cross-examine Officer Ortega about the victim's statements to him; (f) bringing up "the pet criminal past" to the jury; (g) failing to make certain evidentiary objections and to prosecutorial arguments; (h) refusing Applicant access to discovery; (i) failing to advise Applicant whether to testify on his own behalf at trial and in the habitual criminal trial; (j) in continuing to represent Applicant even though there was a conflict-of-interest and in failing to advise the court that a different attorney was representing Applicant in the habitual criminal proceeding; and, (k) failing to conduct an investigation and present mitigating evidence.   (*Id.* at 15-17).

Applicant also asserts in claim five that direct appeal counsel was constitutionally ineffective in failing to raise as issues on appeal numerous constitutional errors that occurred at Applicant's trial. (*Id.* at 18).  Finally, Mr. Dixon asserts in claim five that:  that the evidence to support his sexual assault conviction was insufficient because the prosecution relied on inadmissible other acts evidence and prejudicial arguments to convict him; and, that Applicant's habitual criminal convictions were unconstitutionally obtained.  (*Id.*).

### 1.  Ineffective assistance of trial and appellate counsel

Respondents contend that Mr. Dixon procedurally defaulted all of his ineffective-assistance-of-counsel (IAC) claims in the Colorado Court of Appeals during his state post-conviction proceeding. (ECF No. 25, at 29).

The state district court addressed several of Applicant's IAC claims on the merits in a detailed, 18-page order denying the motion for post-conviction relief.  (ECF No. 15-8).  On appeal, however, Applicant did not present the factual predicate for his claims to the Colorado Court of Appeals.  Instead, he argued that counsel was ineffective in the following ways:

> 1) failure to investigate, 2) failure to introduce non-testimony evidence at trial, 3) failure to effectively cross-examine and impeach witnesses, 4) ineffectiveness in matters relating to the attorney-client relationship, 5) the offering of evidence and information that was prejudicial to Defendant, [and] 6) ineffectiveness issues at the habitual criminal trial, . . .

(ECF No. 15-7, at 12).  Mr. Dixon also asserted that defense counsel failed to call a "defense medical expert" and failed to interview the victim and Detective Castro. (*Id.* at 11).  He further raised a claim of ineffective assistance of appellate counsel.  (*Id.* at 12).

The state appellate court declined to review Applicant's IAC claims on the following grounds:

### III.  Perfunctory or Conclusory Arguments

> Because defendant's arguments are made in a perfunctory or conclusory manner, our ability to review them is hampered.

> An appellate court may decline to review issues that are presented on appeal in a perfunctory or conclusory manner. *See People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007); *People v. Venzor*, 121 P.3d 260, 264 (Colo. App. 2005).  Further, a defendant may not incorporate his postconviction motion into his appellate briefs by reference thereto.  *See* C.A.R. 57; *People v. Sexton*, 2012 COA 26, ¶ 35.  Such a technique is "improper because it attempts to shift . . . to the appellate court[] the task of locating and synthesizing the relevant facts and arguments."  *Castillo v. Koppes-Conway,* 148 P.3d 289, 291 (Colo. App. 2006). . . . .

> . . . Defendant does not state with any specificity which decisions he is
> referring to, does not provide any facts to support his argument, and does not cite
> to any authority to show that the trial court erred in concluding that defense
> counsel's decisions were strategic.  *See Castillo*, 148 P.3d at 291-92 (discussing
> appellant's duty to "present a cogent assertion of error").  Defendant's reference
> to certain pages in the trial court's order is insufficient.  *Mauldin v. Lowery*, 127
> Colo. 234, 236, 255 P.2d 976, 977 (1953) (recognizing appellant's responsibility
> to inform the court of "the specific errors relied on and the grounds and
> supporting facts and authorities therefore").  Additionally, it was insufficient to
> state that he "raised errors of trial counsel in his postconviction motion" and
> "raised questions that could not possibly be answered without a hearing."  *See
> Sexton*, ¶ 35.
>
> While defendant argues that counsel should have interviewed the victim
> and the detective originally assigned to the case, he does not state what those
> interviews would have revealed or how his defense was prejudiced by the failure
> to interview those individuals.  Because defendant's arguments are perfunctory or
> conclusory, we decline to address them.  *See Wallin*, 167 P.3d at 187.

(*Dixon II*, ECF No. 15-6, at 5-7).  The state appellate court also concluded that the additional

claims raised by Mr. Dixon for the first time in his reply brief were not properly before it.  (*Id.* at

7).  *See People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo. 1990); *People v Grant*, 174 P.3d

798, 803 (Colo. App. 2007).  The Colorado Court of Appeals found, in the alternative, that the

claims raised in the reply brief were made in a perfunctory or conclusory manner and declined to

address them.  (*Id.* at 8).

The procedural rules relied on by the Colorado Court of Appeals to reject Mr. Dixon's

IAC claims in the state post-conviction proceeding are independent of federal law and adequate

to support the court's decision.  As such, the Court finds that Mr. Dixon procedurally defaulted

all of his IAC claims in *Dixon II*.  Further, he has failed to meet the cause and prejudice standard

or the fundamental miscarriage of justice exception for the reasons discussed in Section IV.A.2,

*supra*.  Claims three, four, and 5(a)-5(k) thus will be dismissed.

### 2. Sufficiency of the evidence and unconstitutionality of habitual criminal convictions

Mr. Dixon asserts in his fifth claim for relief that the evidence was insufficient to support his sexual assault conviction.  He further claims that his habitual criminal convictions were unconstitutionally obtained.  Respondents argue that Applicant defaulted these claims in the state courts pursuant to an independent an adequate state procedural rule.  (ECF No. 25, at 33-34).

The state district court ruled that the claims were barred from post-conviction review because they could have been raised on direct appeal, citing Colo. R. Crim. P. Rule 35(c)(3)(VII).  (ECF No. 15-8, at 18).  In *Dixon II*, the Colorado Court of Appeals determined that the claims were abandoned because Applicant failed to reassert the issues on appeal.  (ECF No. 15-6, at 9). *See People v. Tucker*, 232 P.3d 194 (Colo. App. 2009) (issue not reasserted on appeal is deemed abandoned); *Rodriguez*, 914 P.2d at 249 (concluding that "Rodriguez' failure to specifically reassert on this appeal all of the claims which the district court disposed of as previously litigated on direct appeal constitutes a conscious relinquishment of those claims which he does not reassert").

The Court finds that Mr. Dixon procedurally defaulted his insufficiency of the evidence claim and his claim challenging the constitutionality of his criminal convictions in the state courts pursuant to adequate and independent state procedural rules.  Further, he has failed to meet the cause and prejudice standard or the fundamental miscarriage of justice exception for the reasons discussed in Section IV.A.2, *supra*.   As such, the portion of claim five asserting the evidence was insufficient to support Applicant's conviction and challenging the constitutionality of his habitual criminal convictions will be dismissed.

## V.  ORDERS

For the reasons discussed above, it is

**ORDERED** that the following sub-claims are DISMISSED with prejudice as procedurally barred: 1(a), 1(c), 1(d)(i), 1(d)(ii), 1(d)(iii), 1(e)(ii), 1(e)(iii), 2(a), 2(b), 2(c)(i), 2(c)(ii) (violation of Sixth Amendment confrontation rights), 2(d)(i), 2(d)(ii), 2(e), 2(f), 2(g), 2(h) (except for the allegations raised in sub-claim 2(c)(ii), which will be addressed on the merits as part of the cumulative error claim raised in  1(f)), 3, 4, 5(a) - (k); the remaining allegations in claim five asserting: ineffective assistance of appellate counsel; the evidence was insufficient to support Applicant's sexual assault conviction; and, the habitual criminal convictions were unconstitutionally obtained.  It is

**FURTHER ORDERED** that within thirty (30) days, Respondent(s) shall file an Answer in compliance with Rule 5 of the Rules Governing Section 2254 Cases that fully addresses the merits of Applicant's properly exhausted sub-claims (1(b)(i), 1(b)(ii), 1(e)(i), 1(f) (except for the allegations in sub-claim 1(d)(iii), 2(c)(ii) (violation of constitutional right to present a defense)). It is

**FURTHER ORDERED** that within thirty (30) days of the filing of the Answer Applicant may file a Reply, if he desires.

DATED this 4th day of March, 2014.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge

21