IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 13-cv-02174-MSK

ROBERT H. DIXON,

       Applicant,

v.

STEVE HARTLEY, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

       Respondents.

---

ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

Applicant, Robert H. Dixon, has filed, *pro se*, an Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 21) challenging the validity of his criminal conviction in the District Court of Denver, Colorado. Respondents have filed an Answer (ECF No. 34), and Applicant has filed a Reply (ECF No. 42). Having considered the same, along with the state court record, the Court will deny the Application.

**I. BACKGROUND**

Applicant's first trial, in Denver County District Court Case No. 06CR3022, ended in a hung jury and mistrial. (ECF Nos. 15-1, at 6; 15-12, at 14). Following a second jury trial, Applicant was convicted of first degree sexual assault. (ECF No. 15-1, at 9). He was adjudicated a habitual offender and sentenced to a 48-year prison term in the Colorado Department of Corrections. (*Id.*).

The Colorado Court of Appeals affirmed Applicant's convictions and sentence on direct appeal in *People v. Dixon* (*Dixon I*)*,* No. 07CA1158 (Colo. App. Sept. 10, 2009) (unpublished

decision). (Doc. No. 15-11). The Colorado Supreme Court denied Applicant's request for certiorari review on December 21, 2009. (ECF No. 15-9).

On April 12, 2010, Applicant filed a motion for sentence reconsideration pursuant to Colo. R. Crim. P. 35(b), which was denied by the state district court on July 7, 2010. (ECF No. 15-1, at 3). Applicant did not appeal that order.

On December 30, 2010, Applicant filed a motion for post-conviction relief pursuant to Colo. R. Civ. P. 35(c), which the state district court denied summarily on April 1, 2011. (*Id.* at 2; ECF No. 15-8). The Colorado Court of Appeals affirmed the district court's order in *People v. Dixon* (*Dixon II*), 11CA0942 (Colo. App. Oct. 18, 2012) (unpublished). (ECF No. 15-6). The Colorado Supreme Court denied certiorari review on June 24, 2013. (ECF No. 15-4).

Applicant initiated this action on August 14, 2013. He filed an Amended Application on January 24, 2014. (ECF No. 21). The Court discerns the following claims from the Amended Application:

> 1) Prosecutorial misconduct, in violation of Applicant's due process rights, as evidenced by: (a) the prosecution's strikes of "all African-Americans and women gender" from the panel, leaving an "all white jury with only one women [sic]" (*id.* at 7); (b) the fact that the Sexual Assault Nurse Examiner (SANE) who examined the victim: (i) changed her testimony between the first and second trial, and thereby "exaggerat[ed] the severity of [her] evidentiary medical findings" (*id.* at 5); and, (ii) "alter[ed] a diagram she had prepared and used in the first trial," to show "more cuts and injury's [sic] to the victim's labia." (*id.*); (c) the prosecution's introduction of "false evidence" namely, crime scene photos alleged to have been, but actually were not, taken by the original detective (*id.* at 6); (d) the prosecution's handling of other act evidence – namely, (i) mentioning, during opening statement, that Applicant had sexually assaulted two other victims (without the benefit of an immediate curative instruction) (*id.* at 7); (ii) asserting that the other sexual assaults happened in the same way as the charged crime (*id.*); and, (iii) suggesting, during cross-examination of Applicant, that he had sexually assaulted two other victims (*id.* at 6); (e) the prosecution's closing argument, which: (i) falsely exaggerated the SANE's findings (*id.* at 6) (e.g., arguing that the victim's vagina was "shredded" and "torn open from top to

bottom"); (ii) improperly stated that the jurors would have felt "cheated" if the prosecution had not introduced evidence of applicant's prior sexual assaults, as it had discussed in opening statements (*id.* at 8); and, (iii) "[w]hat you have heard from SM confirmation by nurse Marquez tells you this was not consensual intercourse" (*id.*); and, (f) cumulative error (*id.*).

2) The trial court violated Applicant's due process rights when: (a) an expert prosecution witness who did not testify at the first trial testified at the second, even though the expert was not endorsed properly and the defense was unprepared for his testimony (ECF No. 21, at 8); (b) the SANE testified "as an expert on physical trauma without having any expertise in [the] field" (*id.* at 9); (c) the trial court excluded evidence that: (i) a witness, Ms. E, who testified at the first trial that the victim's car was stolen, had since admitted that the victim gave Ms. E permission to use the car (*id.* at 9), and, (ii) the victim's vaginal injury could have been caused by a sexual encounter she had with another person "within hours" of having sex with Applicant (*id.*); (d) the trial court erroneously admitted another sexual assault (i) in the absence of proof that Applicant actually committed that assault (*id.* at 9-10); and, (ii) that, being nearly 20 years old, was too remote in time and unduly prejudicial (*id.* at 10); (e) the trial court ruled that counsel appointed to investigate the validity of Applicant's prior convictions, alleged as habitual criminal counts, could not represent Applicant in the habitual criminal adjudication (*id.* at 10); (f) the trial court refused to appoint new counsel after Applicant complained "numerous times that his counsel would not listen to him and refused to let him participate in any way in his own defense" (*id.*); (g) the trial court refused to conduct a proportionality review (*id.* at 11); and, (h) cumulative error (*id.*).

3). Trial counsel was ineffective in failing to: (a) introduce and use evidence of the alleged victim's clothing to prove that the victim was not dragged 10 feet through dirt and grass, held down, and assaulted; (b) introduce the victim's videotaped statement to the police in which she admitted to having consented to having sex with the Applicant; (c) investigate and use telephone records to show that the victim and her friend were in contact with the Applicant the day of the assault, and afterward; (d) introduce preliminary hearing transcripts to impeach the victim's testimony; and, (e) introduce Nurse Marquez's prior statements into evidence that she did not know how the victim's injury occurred. (ECF No. 21, at 11-13).

4). Trial counsel was ineffective in failing to: (a) interview or subpoena Detective Castro to testify at trial that he did not believe that a crime had been committed; (b) investigate and call the victim's friend, a known prostitute, as a witness to testify that on the night of the assault she and the victim had been drinking and smoking crack cocaine, and that the victim had engaged in prostitution; (c) investigate witnesses John L. and Suzanne S. "on behalf of the petitioner['s]

defense and credibility"; (d) endorse and use a criminal investigator; and, (e) endorse a physical trauma expert to evaluate and testify about the physical evidence. (*Id.* at 13-14).

5). Trial counsel was ineffective in: (a) suggesting that Applicant was guilty of the sexual assault; (b) communicating privately with a juror; (c) failing to impeach the victim after she committed perjury; (d) failing to impeach witness Detective Colaizzi after he lied about not having video evidence that would have exonerated Applicant; (e) failing to adequately cross-examine Officer Ortega about the victim's statements to him; (f) bringing up "the pet criminal past" to the jury; (g) failing to make objections to certain evidence and to prosecutorial arguments; (h) refusing Applicant access to discovery; (i) failing to advise Applicant whether to testify on his own behalf at trial and in the habitual criminal trial; (j) in continuing to represent Applicant even though there was a conflict-of-interest and in failing to advise the court that a different attorney was representing Applicant in the habitual criminal proceeding; and, (k) failing to conduct an investigation and present mitigating evidence. (*Id.* at 15-17). Direct appeal counsel was constitutionally ineffective in failing to present on appeal numerous constitutional errors that occurred at Applicant's trial. (*Id.* at 18). The evidence to support the sexual assault conviction was insufficient because the prosecution relied on inadmissible other acts evidence and prejudicial arguments to convict Applicant. (*Id.*). The habitual criminal convictions were unconstitutionally obtained. (*Id.*).

On September 23, 2013, Magistrate Judge Boyd N. Boland ordered Respondents to file a pre-answer response addressing the affirmative defenses of timeliness and exhaustion of state court remedies. Respondents filed a Pre-Answer Response on November 4, 2013. (ECF No. 15). Magistrate Judge Boland thereafter directed Applicant o file an Amended Application, which Applicant filed on January 24, 2014. (ECF Nos. 18, 21). Respondents filed an Amended Pre-Answer Response (ECF No. 25) on January 30, 2014. In the Amended Pre-Answer Response, Respondents conceded the timeliness of the Application under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1). (*See id.* at 5-6). Respondents further conceded that Mr. Dixon exhausted state remedies for sub-claims 1(b)(i), 1(b)(ii), 1(e)(i), and 2(c)(ii). (*Id.* at 21). Respondents contended, however, that the remainder of Applicant's claims were barred

from federal habeas review based on the doctrines of procedural default and anticipatory procedural default. (*Id.* at 19-36).

In a previous Order, the Court dismissed the following sub-claims as procedurally barred: 1(a), 1(c), 1(d)(i), 1(d)(ii), 1(d)(iii), 1(e)(ii), 1(e)(iii), 2(a), 2(b), 2(c)(i), 2(c)(ii) (violation of Sixth Amendment confrontation rights), 2(d)(i), 2(d)(ii), 2(e), 2(f), 2(g), 2(h) (except for the allegations raised in sub-claim 2(c)(ii), which will be addressed on the merits as part of the cumulative error claim raised in sub-claim 1(f)); and, claims 3, 4, and 5 in their entirety. (ECF No. 37). Respondents filed an Answer to properly exhausted sub-claims 1(b)(i), 1(b)(ii), 1(e)(i), and 1(f) (except for the allegations in sub-claim 1(d)(iii)), and 2(c)(ii) (violation of constitutional right to present a defense). (ECF No. 34). Applicant thereafter filed a Reply. (ECF No. 42).

The Court addresses the merits of Applicant's properly exhausted claims below.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact pursuant to

28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably

> applies it to the facts. *Id*. at 407-08.  Additionally, we have
> recognized that an unreasonable application may occur if the state
> court either unreasonably extends, or unreasonably refuses to
> extend, a legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires considering the
> rule's specificity. The more general the rule, the more leeway courts have in
> reaching outcomes in case-by-case determinations. [I]t is not an unreasonable
> application of clearly established Federal law for a state court to decline to apply
> a specific legal rule that has not been squarely established by [the Supreme]
> Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted).  In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent

will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**B. *Pro Se* Litigant**

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief

can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not entitle a litigant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### III. ANALYSIS

#### A. Sub-claims 1(b)(i) and 1(b)(ii)

In sub-claim 1(b), Applicant asserts that his due process right to a fair trial was violated when the Sexual Assault Nurse Examiner (SANE) who examined the victim: (i) changed her testimony between the first and second trial, and thereby "exaggerat[ed] the severity of [her] evidentiary medical findings" (ECF No. 21, at 5); and, (ii) "alter[ed] a diagram she had prepared and used in the first trial," to show "more cuts and injury's [sic] to the victim's labia." (*Id.*).

The Tenth Circuit has summarized the case law governing § 2254 claims involving the admission of evidence that is alleged to have been so unfairly prejudicial as to violate due process:

> In *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), the Supreme Court held that when a state court admits evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." And in *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), the Court made clear that this principle holds true regardless of whether the evidence at issue was properly admitted pursuant to state law.

*Lott v. Trammell*, 705 F.3d 1167, 1190-1191 (10th Cir. 2013) (parallel citations omitted). *See also Lisenba v. California*, 314 U.S. 219 (1941) ("In order to declare a denial of [due process] we must find that the absence of [fundamental] fairness fatally infected the trial; the acts

9

complained of must be of such quality as necessarily prevents a fair trial.").

"Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner . . . ." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citing *Donnelly* v. *DeChristophoro*, 416 U.S. 637, 643 (1974)). Further, "because a fundamental fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted). Finally, a federal habeas petitioner is not entitled to relief for a constitutional violation that occurred during a state criminal proceeding unless "the . . . error [at issue] 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)).

On direct appeal, the Colorado Court of Appeals rejected Applicant's allegations in sub-claim 1(b)(i) on the following grounds:

> The SANE nurse described S.M.'s injuries similarly at both trials. Although her testimony in the first trial was less clear as to which vaginal tears she observed with her naked eye and which injuries were visible with the colposcope, she did not say that she could only see the injuries with the colposcope. That her testimony at the second trial was clearer does not mean that she changed or exaggerated it.

(*Dixon I*, ECF No. 15-11, at 5).

The CCA denied relief for sub-claim 1(b)(ii) based on the following reasoning:

> The SANE nurse also used the same diagram at both trials to show the location and extent of S.M.'s injuries. Contrary to the [Applicant's] argument that she enhanced the diagram at the second trial, the record shows that she marked the diagram at the first trial and testified to those markings at the second.

(*Id.*).

The state appellate court's factual findings are presumed correct and are supported by the state court record.  (*See* State Court R., 2/6/07 Trial Tr., at 87, 88, 92-94; 4/17/07 Trial Tr., at 25-26, 30-34).  Applicant does not point to any clear and convincing evidence that the SANE altered her testimony, or the evidence, between the first and second trials.  Further, the SANE's testimony was probative of the extent of the victim's injuries.  Accordingly, the Court finds that the Colorado Court of Appeals' determination of Applicant's claim was reasonable in light of the evidence presented at trial.  Further, Applicant has failed to show that the SANE's testimony at the second trial had a substantial and injurious effect on the jury's verdict.  Sub-claims 1(b)(i) and 1(b)(ii) will be dismissed.

**B. Sub-claim 1(e)(i)**

In sub-claim 1(e)(i), Applicant contends that he was prejudiced at trial when the prosecutor remarked during opening statement that the victim's vagina was "shredded" and "torn open from top to bottom" (ECF No. 21, at 6; *see also* ECF No. 15-12, at 15), and argued in closing that SM was "ripped open the size of her thumb, some of the worst injuries that [the SANE] has seen in her 35 plus years as a nurse."  (ECF No. 15-12, at 15).

Habeas relief is appropriate when a prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (quoting *Donnelly* , 416 U.S. at 643); *see also United States v. Young*, 470 U.S. 1, 11 (1985) ("Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding."). To establish that a prosecutor's remarks were so inflammatory that they prejudiced substantial rights, a petitioner must overcome a high threshold: he or she must demonstrate either persistent

and pronounced misconduct or that the evidence was so insubstantial that absent the remarks, the jury would not have convicted. *Berger v. United States*, 295 U.S. 78, 89 (1935). In applying this demanding standard, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 699 F.2d at 1036; *see also Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000) ("not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation.").

"The *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Mathews*, 132 S.Ct. 2148, 2155 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

In *Dixon I*, the Colorado Court of Appeals, reviewing for plain error, found no merit to Applicant's claim based on the following reasoning:

> Among other things, the [SANE] testified that in her opinion the injuries the victim sustained to her vaginal area resulted from "forceable intercourse" because "there [were] three separate areas of injury," which included a five-centimeter laceration that "was a little longer than [she] generally saw." She also testified that in her thirty-five-year experience as a nurse, "[y]ou usually don't get tears when . . . [intercourse is] consensual."
>
> Anticipating this evidence, the prosecutor commented in opening statement at the second trial, "[The victim] was torn up pretty much from top to bottom. Her vagina was shredded by the actions of this defendant when he raped her." In closing argument, the prosecutor states that "[the victim] was ripped open the size of her thumb, some of the worst injuries that [the SANE] has seen in her 35 plus years as a nurse." Although the prosecutors' statements about the evidence were not entirely accurate, they were mentioned only briefly and did not severely embellish the SANE nurse's testimony. As a whole, the statements did not deprive [Applicant] of his right to a fair trial. [Internal state case law citations omitted].
>
> Therefore, we conclude that the prosecutors' statements did not constitute prosecutorial misconduct. And, even if the statements constituted error, it was not egregious and did not so undermine the fundamental fairness of the trial as to case serious doubt on the reliability of the judgment of conviction.

(ECF No. 15-11, at 5-7).

The state court record reflects that the prosecutor exaggerated the SANE's testimony on two specific occasions - once during opening statement, and, again in closing argument. (Trial Court R., 4/16/07 Trial Tr., at 230; 4/18/07 Trial Tr. at 103). However, the jury heard the testimony of the SANE and was able to determine whether the prosecutor's characterization of that testimony was inaccurate. Further, the trial court instructed the jury to decide the case based on the evidence presented. (State Court R., Court File, Jury Instruction No. 1, at 325-326). And, there was significant evidence in the record – specifically the victim's testimony, which was corroborated by her physical injuries– to support the jury's guilty verdict. (*See* 4/17/07 Trial Tr., at 25-33, 182-195). Accordingly, it was reasonable for the state appellate court to determine that, in the context of the entire trial, the prosecutor's isolated remarks did not substantially influence the jury's verdict. *See Donnelly*, 416 U.S. at 646-47 (recognizing that while "consistent and repeated misrepresentation" of evidence "may profoundly impress a jury and may have significant impact on the jury's deliberations[,]" . . . "[i]solated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion and not evidence, do not reach the same proportions."). *See also Wilson v. Sirmons*, 536 F.3d 1064, 1117 (10th Cir. 2008) (concluding that prosecutor's minor misstatement of the evidence in a trial where there was overwhelming evidence of the petitioner's guilt did not violate due process); *United States v. Batton*, No. 13-8017, 527 F. Appx. 686, 689 (10th Cir. June 5, 2013) (unpublished) (prosecutor's misstatement of the evidence on one occasion did not influence the jury's verdict where abundant evidence supported the defendant's conviction). The state appellate court's resolution of Applicant's claim "was [not] so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 131 S. Ct. at 786-787.

Further, the prosecutor's comments did not have a substantial and injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 623. As discussed above, SM's testimony that she was sexually assaulted was corroborated by her injuries and other witnesses testified that Applicant had committed two similar rapes in the past. (State Court R., 4/17/07 Trial Tr., at 239-253; 4/18/07 Trial Tr., at 7-32). In light of the strength of the prosecution's case, it is not plausible that the prosecution's exaggeration of SM's injuries "tipped the scales in favor of the prosecution." *Hoxie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir. 1997). Sub-claim 1(e) will be dismissed.

## C. Sub-claim 2(c)(ii)

In claim 2(c)(ii), Applicant contends that the trial court's exclusion of evidence that the victim had sex with her boyfriend 24-26 hours before the rape deprived him of the constitutional right to present a defense. Applicant asserts that the excluded evidence would have established an alternate cause of the victim's vaginal injuries.

Before trial, the defense filed a motion to admit evidence of the victim's prior sexual conduct. (State Court R., Court File, at 255-57). The trial court excluded the evidence under Colorado's Rape Shield statute COLO. REV. STAT. (C.R.S.) § 18-3-407 (2008). (ECF No. 15-11, at 8; ECF No. 15-12, at 23-24). The purposes of the Colorado rape shield statute are to protect rape and sexual assault victims from humiliating "fishing expeditions" into their past sexual conduct, *see People v. Murphy*, 919 P.2d 191, 194 (Colo. 1996); to overcome victims' reluctance to report incidents of sexual assault; and to protect victims from "psychological or

emotional abuse in court as the price of their cooperation in prosecuting sex offenders." *Colorado v. McKenna*, 585 P.2d 275, 278 (1978). The statute creates a rebuttable presumption that such evidence is irrelevant. *See* § 18-3-407(1), C.R.S.

A defendant's rights to due process and compulsory process include the right to present witnesses in his or her own defense. *Washington v. Texas*, 388 U.S. 14, 18-19 (1967). The Supreme Court has acknowledged that rape shield laws may implicate the Sixth Amendment because, "[t]o the extent that [they] operate[ ] to prevent a criminal defendant from presenting relevant evidence, the defendant's ability to confront adverse witnesses and present a defense is diminished." *Michigan v. Lucas*, 500 U.S. 145, 149 (1991). However, legitimate state interests behind a rape shield statute such as giving rape victims heightened protection against "surprise, harassment, and unnecessary invasions of privacy" may allow the exclusion of relevant evidence if the state's interests in excluding the evidence outweigh the defendant's interests in having the evidence admitted. *Id*. at 150-52. To determine whether a petitioner was unconstitutionally denied his right to present relevant evidence, the federal habeas court "must balance the importance of the evidence to the defense against the interests the state has in excluding the evidence." *Richardson v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997). "[T]he state may not arbitrarily deny a defendant the ability to present testimony that is 'relevant and material, and . . . vital to the defense.'" *Richmond*, 122 F.3d at 872 (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)) (further quotation omitted). The constitutional right to present a defense is not violated unless the habeas petitioner demonstrates a denial of fundamental fairness at trial – i.e., that the excluded evidence would have created a reasonable doubt that would not otherwise have existed. *Id.*

In *Dixon I*, the Colorado Court of Appeals recognized that the "right to present a defense is fundamental, but not absolute." (ECF No. 15-11, at 7). The state appellate court then rejected Applicant's claim based on the following grounds:

> Here, [Applicant] sough to admit evidence of S.M.'s prior sexual conduct that he alleged was relevant to a material issue in the case, namely an alternative explanation for the victim's injuries. He argued that S.M.'s injuries could have been caused by the cumulative effect of engaging in consensual sex with her boyfriend shortly before her encounter with [Applicant], which he alleged was also consensual. The trial court denied the motion, relying on [*People v.*] *Harris*, [43 P.3d 221, 225 (Colo. 2002)], and finding that such evidence was not logically relevant to the consent issue.
>
> We agree with the trial court that *Harris* is dispositive here. As in *Harris*, the [Applicant's] defense theory was consent. The supreme court found that considering Harris's consent theory and the nurse's testimony that consensual intercourse could cause an abrasion, evidence of the victim's consensual intercourse with her boyfriend was not logically relevant to whether Harris forcefully sexually assaulted the victim. *See Harris*, 43 P.3d at 226. Likewise, [Applicant] here was unable to preliminarily show relevance sufficient to admit this evidence under the rape shield statute.
>
> Further, as in *Harris*, [Applicant] elicited testimony from the SANE nurse that, while not usual, vaginal injuries could be caused by consensual sex. *See id.* Thus, the trial court did not err in excluding the proffered evidence.

(*Id.* at 8-10).

Applicant has failed to explain how evidence of the victim's prior consensual sexual activity was relevant to his defense that he and the victim engaged in consensual sexual intercourse. Stated otherwise, the evidence did not tend to disprove that he sexually assaulted the victim. Further, Applicant was not foreclosed from questioning the SANE nurse concerning her examination findings. Because the evidence was not material, the state trial court's application of the Colorado rape shield statute "did not deprive [him] of significant, exculpatory evidence." *See Romano v. Gibson*, 239 F.3d 1156, 1168 (10th Cir. 2001) (citing *Richmond* and

*Valenzuela-Bernal*, 458 U.S. at 867). Accordingly, sub-claim 2(c)(ii) is without merit and will be dismissed.

**D. Sub-claim 1(f)**

Applicant asserts cumulative error in sub-claim 1(f). (ECF No. 21, at 8). Specifically, he argued on direct appeal that if the issues raised in exhausted sub-claims 1(b)(i), 1(b)(ii), 1 (e)(i) and 2(c)(ii) did not individually require reversal, they accumulated to require reversal. (ECF No. 15-12, at 25-30).

Cumulative error is present when the "cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002) (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990) (en banc)). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of trial is such that collectively they can no longer be determined to be harmless." *Id.* (quoting *Rivera*, 900 F.2d at 1470). On federal habeas review, a cumulative error analysis applies only to cumulative constitutional errors. *Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008).

There is a split in the Circuit Courts of Appeal as to whether the need to conduct a cumulative-error analysis is clearly established federal law under § 2254(d)(1). See *Hooks v. Workman*, 689 F.3d 1148, 1194 n.24 (10th Cir. 2012). The Tenth Circuit has indicated, however, that in the context of ineffective-assistance claims, "for AEDPA purposes, the cumulative-error inquiry is clearly established federal law. *Id.*; *see also Littlejohn v. Trammell*, 704 F.3d 817, 869 (10th Cir. 2013) (recognizing that "[a]though we have never expressly held . .

. that cumulative-error analysis is clearly established federal law, we have long conducted cumulative-error analyses in our review of federal habeas claims.") (collecting cases). This Court need not resolve the issue because under the deferential AEDPA standard of review, Applicant is not entitled to relief.

In *Dixon I*, the Colorado Court of Appeals rejected the cumulative error claim on the basis that there were "no errors in the prosecution's presentation of the evidence and the trial court's refusal to admit evidence of the victim's intimate relationship with her boyfriend, none of the claimed errors prejudiced Applicant." (ECF No. 15-11, at 10). Because this Court has upheld the state appellate court's disposition of Applicant's claims under the AEDPA standard of review, there were not two or more constitutional errors at Applicant's trial that would warrant a cumulative error analysis. As such, Mr. Dixon cannot show that the state appellate court's rejection of his claim was contrary to, or an unreasonable application of, federal law. *See Stouffer v. Trammell*, 738 F.3d 1205, 1229 (10th Cir. 2013).

## IV.  ORDERS

For the reasons discussed above, it is

ORDERED that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 21), filed by Robert H. Dixon, on January 24, 2014, is DENIED and this action is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that no certificate of appealability shall issue because Applicant has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. §

2253(c)(2); Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts; *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith  *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated August 28, 2014, at Denver, Colorado.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge